## John S. Cruttenden, Administrator, v. Electa L. Finlay et al.

1. PETITION TO SELL REAL ESTATE TO PAY DEBTS—*within what time should be filed.* The statute has not provided a period of limitation within which the administrator must file a petition to sell lands to pay debts, but by analogy such petition must be filed within the period of seven years, unless the delay is satisfactorily explained.

Petition in court of probate to sell real estate to pay debts. Appeal from the County Court of Adams County; the Hon. CHARLES B. MC-CRORY, Judge, presiding. Heard in this court at the May term, 1905. Affirmed in part, reversed in part and remanded with directions. Opinion filed November 24, 1905.

WILSON & WALL and EMMONS & EMMONS, for appellant.

D. E. MACK and J. FRANK GARNER, for appellees.

MR. JUSTICE RAMSAY delivered the opinion of the court.

John S. Cruttenden, as administrator *de bonis non* with will annexed of the estate of Matthew B. Finlay, deceased, filed his petition in the County Court of Adams County to sell the real estate of said deceased to pay debts. Said petition was amended twice, and to the petition as so amended a demurrer was filed, which was sustained by the court and petition dismissed. Appellant stood by his petition as amended and an appeal was prosecuted to this court.

For the purpose of this opinion it is only necessary to state that, according to the allegations of the amended petition, Matthew B. Finlay died on the twenty-sixth day of March, 1882, seized of certain real estate which he gave to his wife, Electa L. Finlay, to have and to hold so long as she should live and remain unmarried. He made other devises in his will disposing of his real estate, but in all such gifts left his estate subject to the life use of the widow, and authorized his executor to make sale of part of his real estate with which to provide his wife ample support so long as she should survive him and remain unmarried. Finlay made James F. Carrott executor of said will, who qualified as such on the twelfth day of February, 1884, and assumed the duties of his executorship. On the eleventh day of April, 1884, said widow, Electa L. Finlay, filed her claim against the estate of said deceased, which was allowed by the court in the sum of $6,846.35, upon which there was a credit given for personal property in the sum of $2,319.63, leaving a balance unpaid of $4,526.72, for the collection of which balance nothing was done until the petition in this proceeding was filed on the second day of April, 1904, and which is now unpaid. Under the allegations of said petition nothing was done by said executor in the County Court of Adams County in furtherance of his executorship except the preparation of an inventory, which was filed on February 12, 1884, and at once withdrawn by said executor and by him thereafter retained. There was an appraisement made of the personal estate, belonging to said de-

ceased, on January 2, 1903, when such personal estate was appraised at $157.25, and the widow's award at the same time fixed at $1,203. Thereupon the widow immediately accepted said personal property at its appraised value and elected to take the unpaid balance, viz., $1,045.75, in cash, which said balance upon the award has never been paid or discharged. The defendants in said petition to sell real estate base their demurrer upon the ground that the widow is guilty of laches in not proceeding upon her judgment in apt time and also in not having her award allowed and enforced within proper time. Appellant contends that the widow should not be charged with laches, but claims her delay is satisfactorily explained, and bases the contention upon allegations in the bill, which upon that head are, in substance, that said James F. Carrott, named as executor of said will, was the nephew of said deceased, that he was so named executor with confidence upon the part of said deceased that he would execute said will and protect the interests of the widow; that said widow had no other adviser and placed great reliance upon him; that she asked him from time to time when her debt would be paid, and he said he would look after and protect her interests in said estate, and that her claim would be paid in due time, and that he would take steps to obtain payment and would have appraisers appointed, upon all of which she relied until the month of November, 1901, when she employed other counsel.

The rule which must govern our holding in this case seems to be well established. It is as follows: "The statute has not provided a period of limitation within which the administrator must file a petition to sell lands to pay debts, but in analogy to our Statute of Limitations relating to the lien of judgments, the period of seven years has been adopted as the proper time within which the application should be made. This may be regarded as the general rule. But, if the delay is satisfactorily explained, the mere lapse of time will not bar an application for leave to sell land to pay debts." People v. Lanham, 189 Ill., page 338.

The judgment obtained by the widow in this case was obtained on the eleventh of April, 1884, and no steps taken to enforce such judgment or to have lands sold to pay such debt until the filing of the petition in this case on the second of April, 1904, a period of almost twenty years, and the only question to consider now is whether or not this unusual and extraordinary delay is, by the allegations in the petition, satisfactorily explained. The only thing the widow did to enforce the collection of her judgment or to ask anybody else to do so for her was to go to the executor from time to time and ask him when her debt would be paid. There is no allegation at all in the petition to the effect that said executor was guilty of any fraud or made any effort to deceive the widow, nor is he charged with any wilful intent to effect a loss upon her part. Upon this head the most that can be said, of the allegations in the petition, is that he was guilty of negligence and was dilatory in closing the estate, but during all this time the widow had ample and complete remedy within her grasp to have forced the collection of her entire indebtedness. She was a judgment creditor, and under our law had ample means of subjecting the debtor's estate to the payment of her debt against the estate. In respect to this judgment the executor was not her agent in any sense. Her interests in that regard were inimical to the interests of the estate and antagonistic to all the rights which the executor represented, whether he was acting in the capacity of executor or in the capacity of trustee. Rather than enforce her rights as such creditor it would seem that the widow must have felt satisfied in receiving the results and proceeds of the land during her natural life as provided in the will, and her very unusual delay of nearly twenty years in not enforcing payment of the judgment due her as creditor, would seem to be explained more naturally upon that basis than upon the basis that the executor took advantage of her in any way, and by that means defeated her in the enforcement of her claim. We do not think that the allegations in the bill satisfactorily explain the extraor-

Cruttenden v. Finlay.

dinary delay which in this case must be held to be laches sufficient to defeat the prayer of the petition upon that score.

The doctrine of laches, however, can not properly be invoked to defeat the widow's award in this case. No step was taken by the executor to have any appraisement made nor was any made until the second day of January, 1903. As soon as the appraisement had been made the widow immediately made her selection of the property at its appraised value and elected to take the unpaid portion of her award ($1,045.75) in cash. Her position in connection with the award was not at all like that which she occupied in connection with the judgment. In one case she was a judgment creditor and could at any time have taken the initiative in the collection of her judgment, while in the other she could not properly be called upon to act until the executor had procured the making of an appraisement and the return thereof into the County Court. Our statute clearly contemplates that the widow need do nothing until the appraisement shall have been made out and returned to the County Court and until the executor or administrator shall have notified the widow of such appraisement. This would not be true, of course, if she were acting as executrix or administratrix, in which event she might be guilty of laches, but in this case, since the duty of administering upon the estate rested upon another, the rule of laches above stated has no application.

The action of the court below will be affirmed in respect to its holdings upon that part of the petition that relates to the judgment in favor of the widow and reversed as to the holding upon the widow's award, and remanded with instructions to overrule the demurrer to so much of the petition as relates to such award.

*Affirmed in part, reversed in part, and remanded with directions.*