In re Estate of Frank Konrath, Deceased.
Rose Studnicka, Administratrix of Estate of Frank Konrath, Deceased, Appellee, v. Frank Konrath, Appellant.

Gen. No. 42,511.

490

Opinion filed June 21, 1943. Rehearing denied July 6, 1943.

Jose Ward Hoover and George B. Cohen, both of Chicago, for appellant.

Tage Joranson and Jerry Pech, both of Chicago, for appellees.

Mr. Justice O'Connor delivered the opinion of the court.

By this appeal defendant, Frank Konrath, seeks to reverse a decree entered by the probate court of Cook county that a certain piece of real estate be sold to pay the debts of Frank Konrath, deceased, the father of defendant.

The record discloses that Frank Konrath died intestate December 29, 1925, owning an undivided one-half interest in two lots known as 2300 West 50th Place, Chicago, improved by a two-apartment building, leaving four children by his first wife whom he had divorced and his widow and four children of the second marriage surviving as his only heirs at law and next of kin. One of the apartments was occupied by the widow and her children at the time of her husband's death as a homestead, the other apartment was rented and the widow was collecting the rents. Nothing was done towards probating the estate of the deceased for more than 15 years after his death, when on April 14, 1941, the widow filed a petition in the probate court of Cook county, in which she set up the date of the death of the deceased; that he left no personal property, but real estate of the value of not to exceed $520, leaving him surviving the widow, 2 sons and 6 daughters,·and alleging that the widow and 3 of the daughters resided in the premises in question. The

prayer was that Mrs. Rose Studnicka be appointed administratrix of the estate of the deceased and that Mrs. Studnicka who was the widow's sister lived in the other apartment. That letters of administration were issued to Rose, as prayed for, appraisers were appointed who fixed the widow's award at $1,000, which was approved by the court May 5, 1941; that an inventory was filed showing the deceased left no personal property but left an undivided one-half interest in the property above mentioned.

The inventory set up that the real estate was subject to the right of homestead and dower of the widow; that it was occupied by her as a residence; that the premises were improved by a frame residence consisting of two flats. The inventory was approved May 5, and June 11, 1941, the administratrix filed her verified petition to sell the deceased's interest in the real estate to pay the expenses of administration, the claims against the estate, and the widow's award; that the sale be made subject to the estate of homestead and dower rights of the widow and to the lien of a trust deed securing an indebtedness on the property.

The petition further alleged the death of Frank Konrath intestate December 29, 1925, the appointment of the petitioner on April 14, 1941, as administratrix of the estate; that letters of administration were issued to her; that an inventory and appraisement were filed and approved May 5, 1941; that she had filed her verified statement of the condition of the estate as of May 6, 1941, showing liabilities of two items: $1,000 widow's award and estimated costs and expenses, $475, totaling $1,475, and that this was the amount of the deficiency of personal property. That May 3, 1941, which was within one year after the letters of administration were issued, the widow acknowledged her election in writing to take a dower interest in the real estate instead of an absolute one-third and that such election had been recorded in the Recorder's Office of Cook

county. That the dower had not been assigned or allotted.

It was further alleged in the petition that September 26, 1936, subsequent to the death of the deceased, two of the children quit-claimed their interest in the property to their mother, the widow; that July 29, 1938, the widow executed a trust deed conveying the two lots to secure her installment note of that date under the provisions of the National Housing Act, payable to the Merchants National Bank of Chicago, in 60 monthly installments of $23.39 each; that there was now unpaid on that installment note $334.13, which was then owned by the Merchants National Bank of Chicago. That since the death of the deceased, defendants, Charles Vita and Rose, his wife, from time to time furnished the widow and her four daughters, who lived with her in the premises, "with care and maintenance, paid the general taxes levied" on the premises, furnished improvements and paid from their own funds all payments on the installment note, above mentioned, and that the widow and two of the daughters, August 21, 1940, conveyed their interest in the property by warranty deed to Charles and Rose Vita, as joint tenants, but reserved unto the widow "the exclusive right to occupy that portion of the real estate" during her natural life without liability or any charge; that the dower rights of the widow had not been allotted; that the deed did not convey the widow's dower rights nor release the widow's right of homestead; that the conveyance was made subject to unpaid taxes, special assessments and to a trust deed dated July 29, 1938, and that from January 5, 1926 to May 27, 1930, Charles and Rose Vita made payments on account of principal and interest aggregating $2,571.65 on a mortgage made by Frank Konrath and his wife to a building and loan association and the mortgage was released of record.

It was further alleged that from the death of the deceased December 29, 1925, until the end of the year 1940, the real estate had no value in excess of the right of homestead and dower of the widow but that during the last 5 months Charles and Rose Vita made various improvements and repairs on the property thereby increasing its value so that it now had a value of $250 in excess of the combined value of homestead and dower rights of the widow but that such excess was less than the amount of the widow's award; that the interest of the deceased in the real estate was subject to the widow's estate of homestead and to her dower right and that the property was also subject to a lien of the trust deed; that the premises were then occupied by the widow and 4 of her daughters and the other apartment by Charles and Rose Vita and Charles and Rose Studnicka, the administratrix. The petition then set up that certain parties claimed interest in the premises and were made parties defendant, some of whom were made defendants as unknown owners, etc., and the prayer was that the court order and direct the petitioner to sell decedent's interest in the real estate or such portion thereof as was necessary to pay the expenses of administration and claims against the estate but subject to the homestead and dower right of the widow and of the lien of the trust deed.

Defendant, Frank Konrath, son of the deceased and one of his sisters, filed their answer admitting some of the allegations and denying others. They denied that the estate was insolvent and averred that the widow's award should not have been allowed because it was barred by the Statute of Limitations; that defendants were informed and believed that the widow had collected rents from the other apartment in the building and denied that petitioner was entitled to have the real estate sold to pay the debts and that the petition should be dismissed or, in the alternative, that an

accounting and discovery be had and the widow be required to account for the rents which she collected from the persons occupying the other apartment in the building.

June 19, 1942, a decree was entered as prayed for finding substantially all of the facts as alleged in the petition of the administratrix and decreeing that the interest of the deceased in the property be sold subject to the estate of homestead and dower right of the widow to pay the debts and expenses of administration; that the sale be made at public auction after advertising, etc.

Counsel for defendants say there was no evidence adduced on the hearing but that the court entered the decree on the pleadings, while on the other side, counsel say that evidence was heard and that this is shown by the recital in the decree. Under the state of the record we shall assume there was sufficient evidence to prove the allegations of the petition.

Frank Konrath, defendant, who appeals, contends that the widow's award was barred by the delay, no sufficient reason being shown for the delay. On the other side, counsel for the administratrix contend that the delay was satisfactorily explained and therefore the widow's award was properly allowed and the decree of sale entered. In support of this counsel say: "Where after many years letters of administration are granted to one not the widow, why should the delay in such case necessarily be attributable to the widow? While she has the right to apply for letters, she is not required under the law to do so. In the instant case there were eight other persons, each of whom also had the right to apply for letters. Nor is there any sound reason why the widow should be required to apply for letters in order to protect her widow's award. The law does not require her to do anything with respect to her widow's award until there has been an appraisement in the estate," and

that the *laches* against the widow in this respect commences "to run from the appraisement, and not from the date of decedent's death." And counsel cite *Cruttenden v. Finlay,* 123 Ill. App. 523; *In re Peters' Estate,* 305 Ill. App. 485, and cases from other jurisdictions.

In the *Cruttenden* case it was held that the statute had not provided a period of limitations within which administrators must sell lands to pay debts but by analogy such petition must be filed within a period of 7 years unless the delay is satisfactorily explained. In that case a petition was filed to sell real estate to pay debts of the deceased. A demurrer was sustained to the petition, it was dismissed and an appeal followed. There the deceased died testate March 26, 1882; he devised to his wife certain real estate so long as she should live and remain unmarried. James F. Carrott was named as executor and qualified February 12, 1884, and April 11, 1884, the widow filed her claim against the estate, which was allowed. There was a balance remaining unpaid of this claim and April 2, 1904, the petition to sell the real estate was filed. The executor did nothing except prepare an inventory which was filed February 12, 1884, and at once withdrawn by him and retained. The appraisement of personal property was not made until January, 1903, which showed personal property of $157.25 and a widow's award fixed at the same time at $1,203. The contention was that the widow was guilty of *laches* in not proceeding to enforce the collection of her claim allowed against the estate. She contended that she had satisfactorily explained the delay of the executor, Carrott, who was a nephew of the deceased; that she had placed great reliance upon him and asked him from time to time when her debt would be paid and that he would take steps that this was done; and in November, 1901, she employed other counsel. The court held the delay was sufficient to bar the claim of

her judgment which was allowed in April, 1884, but not to bar her widow's right because no step was taken by the executor to have the widow's award fixed until January, 1903.

In the *Peters* case, which is an abstract opinion, it was held that where the executrix delayed settling the estate for 7 years and 5 days and where a judgment creditor filed a petition to have her removed on the ground of mental incapacity and an administrator *de bonis non* with the will annexed was appointed in her place he was not prevented by the delay from proceeding to sell the real estate to pay claims allowed against the estate.

Counsel for defendant, in support of their contention that the allowance of the widow's award was barred by a *laches* cited *Graham v. Brock*, 212 Ill. 579; *Goetz v. Wenzel*, 177 Ill. App. 484; *White v. Horn*, 224 Ill. 238.

In the *Graham* case, a petition filed by the administrator, praying for an order to sell real estate owned by the deceased to pay debts, was dismissed and an appeal taken. The facts were as follows: The deceased died intestate August 30, 1884, leaving his widow and 7 children as his heirs at law. Letters of administration were issued September 3, 1884 to August L. Craig and James M. Brock, who filed an inventory of the real and personal estate. Claims were allowed. January 2, 1885, the administrators filed a report showing the condition of the real estate and a petition for an order to sell real estate to pay debts. The court found the widow was entitled to a homestead in a certain piece of property and dower in all of the real estate. Commissioners were appointed who assigned to the widow the homestead and dower rights. The administrator sold all the real estate under the decree except a portion set off to the widow for homestead and dower. April 28, 1887, the administrators filed their final report showing the widow's award and claims of the

first class unpaid and August 28, 1887, the administrators were discharged. Nothing further was done in the estate until January 4, 1904, when Graham was appointed administrator *de bonis non*. January 20, 1904, he filed his petition for the sale of the lots and blocks set off to the widow for her homestead and dower. It was averred that the widow had abandoned the homestead in 1899. The petition as to the homestead was dismissed and the only property involved was that which was assigned to the widow as dower. This property was claimed by third parties under the conveyances by the widow and heirs. All of the property was claimed under the Statute of Limitations by virtue of color of title and payment of taxes for 7 years. The petition was dismissed. The court in speaking by Mr. Justice CARTWRIGHT said: "Nineteen years had elapsed after the death of Benjamin F. Brock . . . when the petition in this case was filed, and unless a good reason was given for the delay the proceeding was barred by *laches*. There is no statutory limitation of the right to file such a petition, but it must be done within a reasonable time, and seven years has been adopted by this court as the proper time within which application shall be made. The bar arises from *laches* rather than legal limitation, and if sufficient excuse is given for the delay the mere lapse of time will not bar the proceeding. The determination of the question must depend largely upon the circumstances of each case. (*Bursen v. Goodspeed*, 60 Ill. 277.) . . .

"The only excuse offered to the court, in the petition or proof, of the long delay, was, in substance, that the property was practically worthless for many years, and for that reason the creditors did not care to have it sold and practically abandoned all intention of proceeding against it; but finding that it had increased in value they concluded to institute the proceeding and appropriate it to the payment of their

debts.'' The court held this was not a sufficient excuse, discussed a number of authorities and affirmed the judgment.

We think the rule under the facts announced in the *Graham* case (holding that the delay was not satisfactorily explained) is applicable to the facts in the case at bar. Here the widow was occupying part of the premises in question, collecting rents from the other apartment for more than 15 years and the excuse for the delay is that the property would have brought very little if it had been offered for sale before the petition in the instant case was filed. Moreover, we are of opinion that it would bring very little even if the sale was carried out for the reason that it was to be sold subject to the estate of homestead and dower rights of the widow and the lien of a mortgage.

Upon a consideration of all the facts we are of opinion that the court should have dismissed the petition.

The decree of the probate court of Cook county is reversed and the cause remanded with directions to dismiss the petition.

*Reversed and remanded with directions.*

MATCHETT, P. J., concurs.

MR. JUSTICE McSURELY participated in the decision of this case but passed away before the opinion was filed.